[No. 440-2.    Division Two.    July 11, 1972.]

THE STATE OF WASHINGTON, on the Relation of Daniel J. Evans, as Governor, et al., Respondent, v. AMUSEMENT ASSOCIATION OF WASHINGTON, INC., et al., Appellants.

*Alfred McBee* (of *McBee & Lewis*), for appellants.

*Slade Gorton, Attorney General, C. Kenneth Grosse* and *Jonathan Blank, Assistants,* for respondent.

ARMSTRONG, J.—This appeal arises out of a class action in which the Governor and Attorney General sought a declar-

atory judgment for the purpose of determining whether certain bingo-type pinball machines owned and managed by the defendants were gambling devices and whether their operation constituted a lottery. Defendants now appeal from the trial court's decision declaring that these machines were gambling devices, that their operation constituted a lottery, and enjoining defendants from owning, possessing and managing such machines.

Although we resolve this case on the basis of mootness, a brief summation of the primary issues is helpful in explaining the reasons for our resolution. The issues involve: (1) whether the plaintiffs had the legal capacity to institute proceedings, (2) the propriety of utilizing declaratory judgment and the granting of injunctive relief, (3) whether the pinball machines are gambling devices per se within the definition of RCW 9.47.030 and 9.47.010, (4) whether the pinball machines constitute a lottery under RCW 9.59.010 and article 2, section 24 of our state constitution, and (5) whether RCW 9.47.030 is unconstitutionally vague.

Subsequent to the trial court's decision and while this case was pending on appeal, the legislature repealed the gambling statutes in question as well as most of the old gambling laws contained in RCW 9.47 and enacted Laws of 1971, 1st Ex. Ses., ch. 280, which represents a new comprehensive statutory plan designed to curb professional gambling activities.

Although RCW 9.59.010, relating to lotteries, was not repealed it was substantially amended by various provisions of the new gambling law. One apparent instance of amendment is the new statutory definition of "a contest of chance". RCW 9.47.310(1). The lottery statute defines a lottery as a scheme for the disposition of money or property by chance, among persons who have paid or agree to pay a valuable consideration for chance. RCW 9.59.010. Other amendments were made to the lottery statute by referring to that statute, thus bringing it within the ambit of the new gambling code.

In their briefs the parties presented extensive and comprehensive arguments on the merits of the issues raised in the appeal. In oral argument the state raised the issue of mootness. We have set forth in the margin relevant portions of the state's argument on this issue.[1]

The issues in this appeal became moot when the legislature repealed or substantially amended all of the statutes upon which the declaratory judgment and injunction were based. As a general rule, appellate courts will not pass upon moot questions. In rare cases an appellate court will, in its discretion, retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are involved. *Grays Harbor Paper Co. v. Grays Harbor County,* 74 Wn.2d 70, 442 P.2d 967 (1968).

---

[1] "Respondents make principally, I think, two contentions. First, is that passage of chapter 280, Laws of 1971 moots the issues of this case and it is unnecessary for this court to make a decision in regard to the merits. . . . The trial court's order in this matter was entered on January 21, 1971. On August 9, 1971, chapter 280, Laws of 1971, First Extraordinary Session became effective. Now this statute is probably more commonly known as the new gambling law or as the bingo bill. Unfortunately, that latter phrase does not adequately represent what the bill does. The bill is a comprehensive code regulating all forms of gambling, devising a range of penalties for those forms. By and large, it is more concerned with professional gambling than it is with bingo and raffles. Those are, incidentally, treated in the statute. . . . In drafting the statute we were careful to attempt to draw together most of the definitions that have been created over the years in attempting to construe things commonly used for gambling, and put them into the statute, and pick them up in terms of bringing together all the case law as well as the statutory law dealing with gambling as an offense against the state law. . . . But we did not repeal the statutes, for example, dealing with lotteries; we left them in existence, but simply amended them so that it is a very sophisticated kind of approach to the problem. . . .

"Court: Are you suggesting that we decline to decide the appeal?

"Counsel: Yes, your honor, I believe that it is moot within the perimeters of *Grays Harbor,* and the court stated that the issues can only be decided if they are the continuing and of substantial public interest issues in this lawsuit. . . . You are simply deciding the old law for no purpose. That is the principal thrust of my mootness argument on substance."

A statement in the *Grays Harbor* case is particularly applicable to the case at bar:

In the instant case the determinative factor is that substantial changes in the statutory provisions here in question have been made. The rationale for declining to decide purely academic questions is particularly persuasive where the case involves constitutional questions with respect to a statute which has been rewritten or superseded by another statute, unless, of course, the statutory changes are irrelevant to the issues presented.

74 Wn.2d 70, 73.

We conclude that the issues presented in this appeal are moot. Since the relevant statutes have been superseded by a new and comprehensive plan which will answer the questions raised in this appeal and clearly grant the relief sought by the state, we find no reason to apply the continuing and substantial public interest exception to the general rule that appellate courts will not pass upon moot questions.

It might appear that defendants now have the disadvantage of an existing injunction granted under the repealed and substantially amended provisions of the old law as well as now being subjected to the more detailed, specific and stringent provisions of the new law. After examining the new comprehensive gambling code we are not sure whether maintaining the existing injunction in effect is a disadvantage to the defendants; but if it is, they are not without a remedy. They may invoke the discretionary authority of the superior court provided in Rule 60 (b) (6) and (b) (11) and (c) of Civil Rules for Superior Court:

### Rule 60
#### RELIEF FROM JUDGMENT OR ORDER

(b) . . . On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . .

(6) . . . [I]t is no longer equitable that the judgment should have prospective application;

. . .

309

(11) Any other reason justifying relief from the operation of the judgment.

. . .

(c) . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding.

Appeal dismissed.

PETRIE, C.J., and PEARSON, J., concur.