# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| CENTER FOR RESPONSIBLE FORESTRY, | No.  56964-7-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF NATURAL RESOURCES, BOARD OF NATURAL RESOURCES, and COMMISSIONER OF PUBLIC LANDS HILARY FRANZ, in her official capacity, | UNPUBLISHED OPINION |
| Respondents, | |
| MURPHY COMPANY, DBA MURPHY COMPANY OF OREGON, | |
| Intervenor. | |

PRICE J. — The Center for Responsible Forestry (Center) appeals the superior court's dismissal of its challenge to the Department of Natural Resources' (DNR) approval of a timber sale, called "About Time."

During the course of the appeal, the harvest of the About Time timber proceeded and is now complete. The purchaser of the About Time timber rights, intervenor Murphy Company, moved to dismiss the Center's appeal as moot. Because the Center's requested relief can no longer be granted by us and no compelling exception to mootness exists, we dismiss the Center's appeal.

No. 56964-7-II

FACTS

I. ABOUT TIME TIMBER SALE

About Time was a timber sale located in Grays Harbor County, involving 75 acres in the Lower Chehalis State Forest. As part of state-owned forest land, the area was held by the State in trust for public beneficiaries and was managed by the DNR. About Time and the surrounding forest had previously been managed for timber production. Some stands of timber within About Time were 84 years old and considered "botanically diverse." 4 Admin. R. (AR) at 1046.

In 2021, DNR proposed the About Time sale to the Board of Natural Resources. DNR had previously completed a State Environmental Policy Act (SEPA)[1] checklist and issued a determination of nonsignificance (DNS) for the sale. In September 2021, the Board of Natural Resources approved the sale. The rights to harvest the timber were then sold to Murphy Company.

II. THE CENTER'S APPEAL OF ABOUT TIME AND OTHER SALES TO THE SUPERIOR COURT

One month later, the Center appealed the sale to the superior court. The Center argued the approval violated the "Public Lands Act"[2] and SEPA. Specifically, the Center claimed that DNR failed to comply with a final "Habitat Conservation Plan" (HCP) for the area and the Board of Natural Resources' Policy for Sustainable Forests, making the approval arbitrary and capricious and contrary to law.

The HCP and Policy for Sustainable Forests are documents related to the federal conservation of endangered species populations. Two of these species, the northern spotted owl

---

[1] Ch. 43.21C RCW.

[2] Ch. 79.02 RCW.

2

and marbled murrelet, were listed as endangered in 1990 and 1992. Forests across Washington provide habitats for these endangered species, including lands held in trust for public beneficiaries. In order to auction the rights to harvest timber on trust lands that provide habitat to endangered species, DNR was required to obtain an incidental take permit from the federal government to better ensure that harvest activities would not harm the endangered species. To obtain the permit, DNR had to receive approval of its HCP from the Secretary of the Interior. The HCP includes an estimate that after 100 years of forest management in accordance with its requirements, between 10 and 15 percent of forests in the forest planning units in Western Washington would be "fully functional," meaning the stands of trees in those forested areas would be at least 150 years old. 35 Admin. R. (AR) at 3654.

Following implementation of the HCP, DNR created the Policy for Sustainable Forests (PSF). The PSF commits DNR to manage its forests to achieve a 10 to 15 percent target of "older forest" conditions in each HCP planning unit within 70 to 100 years of the PSF's implementation.

The Center argued that DNR violated the Public Lands Act because the predictions and goals of the HCP and PSF had not yet been met. The Center based its argument on the results of a DNR analysis, entitled Identifying Stands to Meet Older Forest Targets in Western Washington (Stand Identification Memo), commissioned in May of 2021. The Stand Identification Memo showed that in About Time's planning unit, the goals set forth in the HCP and PSF were not yet met.[3] The Center claimed that About Time, if left unharvested, would be able to help fulfill unmet

---

[3] By 2100, the Stand Identification Memo predicted that 12.5 percent of the planning unit About Time is located in would have older forest conditions.

commitments in these documents because of the ages of About Time stands and its characterization as botanically diverse.

The Center also argued that DNR violated SEPA because noncompliance with the HCP and PSF showed that harvesting timber from About Time would have significant adverse environmental impacts, contrary to the DNS.

In addition to the About Time sale, the Center appealed the approval of at least five other timber sales. Two of the other appeals were for timber sales named Bluehorse and Prospero, which were also located in Grays Harbor County. The other appeals were similarly based on DNR's alleged noncompliance with the HCP and PSF.

The superior court consolidated the Center's appeal of About Time with its appeals of Bluehorse and Prospero. Following oral argument, the superior court dismissed the consolidated appeals and affirmed the timber sales.

III. THE CENTER'S APPEAL TO THIS COURT

The Center appealed the superior court's decision for About Time to this court, again arguing that DNR was not compliant with the HCP and the PSF. The Center also asserted noncompliance with a third document, a January 2007 DNR internal policy entitled Identifying and Managing Structurally Complex Forests to Meet Older Forest Targets (Westside) (2007 Procedure).

The 2007 Procedure was an internal policy adopted by DNR to fulfill its obligations in the PSF. The 2007 Procedure contained additional guidance for timber harvests for structurally complex forests, including that if less than 10 percent of an HCP planning unit contained "structurally complex forests prioritized to meet" the PSF conservation goals, DNR was required

to designate additional suitable forests to help meet the goals. 6 AR at 1269. Until enough forest lands were designated to constitute 10 percent of the area to be "structurally complex," other stands would not be available for harvest. 6 AR at 1269.

The 2007 Procedure additionally called for the creation of a "forest land plan" to help meet the PSF goals. 6 AR at 1269. Until a forest land plan was created, proposed tree harvests with structurally complex forests like About Time were required to include specific detailed information, including an assessment of forest conditions, an analysis of known landscape management strategies, and the specific stand's role in meeting the PSF older forest goals.

According to the Center, DNR violated the 2007 Procedure in at least two ways. First, the Center argued that because less than 10 percent of About Time's planning unit was structurally complex, About Time was not available for harvest under the 2007 Procedure. Thus, the approval of the sale was arbitrary and capricious.

Second, the Center argued that there was no evidence that DNR had completed a forest land plan. Therefore, the proposal for the About Time sale should have been accompanied by the detailed information required by the 2007 Procedure prior to the sale's approval.

DNR conceded it had not created a forest land plan under the 2007 Procedure. However, *after* the sale was approved, DNR identified sources for the required detailed information; an October 2021 "About Time Stand Analysis" for the sale, and the SEPA checklist. 4 AR at 1042. DNR explained that the About Time Stand Analysis and SEPA checklist both contained analyses of the About Time forest conditions, and the SEPA checklist also disclosed known landscape management strategies by referencing the HCP and PSF. And DNR argued that it did not need to explain About Time's role in meeting the PSF goals because DNR was on track to meet its older

forest goals in About Time's planning unit. The Center characterized this explanation and the use of the post-sale About Time Stand Analysis to fulfill the 2007 Procedure's requirements as an invalid "post-hoc rationalization" for About Time's approval. Appellant's Reply Br. at 14.

The Center also reasserted that About Time's DNS violated SEPA. The Center argued that SEPA required DNR to disclose conflicts with environmental law within the DNS, but that DNR did not specifically disclose the alleged conflicts with the HCP, PSF, or 2007 Procedure.

Based on its arguments, the Center requested that the About Time sale be invalidated as arbitrary and capricious and contrary to law.[4]

IV. COMPLETION OF THE TIMBER HARVEST AND MURPHY COMPANY'S MOTION TO DISMISS

Meanwhile, Murphy Company continued harvesting the About Time timber. Despite this, the Center did not obtain a stay to enjoin the harvesting. In February 2023, Murphy Company completed the timber harvest. Thereafter, DNR and Murphy Company completed an "Operating Release," ending the contract and terminating any further harvesting rights. *See* Mot. to Dismiss Appeal as Moot at 7; Decl. of Lawrence Knox Marshall in Supp. of Mot. to Dismiss Appeal as Moot, Ex. 1.

With the harvesting complete, Murphy Company moved to dismiss the Center's appeal as moot, arguing we could no longer grant the Center's requested relief. DNR joined the motion.

ANALYSIS

Murphy Company argues that the Center's appeal is moot because the About Time timber sale has been completed in its entirety. The Center disagrees, but argues that even if its appeal is

---

[4] Notably, the Center's opening brief did not mention either the Bluehorse or Prospero timber sales.

technically moot, the public interest exception to mootness applies and review is still warranted. We hold the Center's appeal is moot and does not meet the public interest exception.

I. LEGAL PRINCIPLES

We will dismiss an appeal if it is moot. RAP 18.9(c). An appeal is moot if "the matter is 'purely academic' such that the court cannot provide effective relief." *Ctr. for Biological Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 985, 474 P.3d 1107 (2020) (internal quotation marks omitted) (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 258, 138 P.3d 943 (2006)).

Although moot cases are generally dismissed, we may exercise our discretion to retain and decide cases in "rare" instances when there is a substantial and continuing public interest. *State ex rel. Evans v. Amusement Ass'n of Wash., Inc.*, 7 Wn. App. 305, 307, 499 P.2d 906 (1972). We consider three factors when evaluating whether to issue an opinion in moot cases:

> "[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question."

*State v. Hunley*, 175 Wn.2d 901, 906, 287 P.3d 584 (2012) (alterations in original) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 736, 214 P.3d 141 (2009)). We may additionally consider " 'the likelihood that the issue will escape review because the facts of the controversy are short-lived.' " *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994) (quoting *Seattle v. State*, 100 Wn.2d 232, 250, 668 P.2d 1266 (1983)).

II. THE CENTER'S APPEAL IS MOOT

Here, the core relief requested by the Center was the invalidation of the About Time timber sale based on noncompliance with the Public Lands Act and SEPA. The Center's arguments identified specific characteristics of the About Time sale that it believed made harvesting contrary

to the HCP, PSF, and 2007 Procedure—specifically, that the stand characteristics in About Time made it capable of contributing to the projections and goals in the documents.[5] The appeal was focused on conserving the timber to meet the requirements with which the Center contended DNR was failing to comply. But About Time is clearly no longer available for this conservation, making this relief impossible for us to provide. It is moot.

## III. PUBLIC INTEREST EXCEPTION TO MOOTNESS DOES NOT APPLY

Even if moot, the Center argues the public interest exception should apply because the outcome of this appeal would be useful to inform the courts for other timber sales. The Center also points to ecological issues at stake to argue there is a substantial and continuing public interest to warrant determining this appeal. We disagree and decline to apply the public interest exception to decide this otherwise moot appeal.

Consideration of the three factors for public interest exception shows this is not the "rare" moot case that should be reviewed. The first factor—whether questions presented are public or

---

[5] The Center also argues its appeal is not moot because we could provide declaratory relief or order mitigation measures be implemented for About Time. But nothing in the Center's briefing or assignments of error shows it was requesting these remedies. The Center's only mention of something akin to declaratory relief is a vague request on the final page of its opening brief that we "declare that approval of About Time violated the Public Lands Act, the State Environmental Policy Act, and was arbitrary and capricious, and contrary to law." Appellant's Opening Br. at 62. Because the Center did not include actual argument about these remedies, we do not consider them to overcome mootness. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we will not consider issues that are not supported by argument, references to the record, and legal authority).

The Center also argues that its appeal is not moot because the timber sales that were consolidated by the superior court, Bluehorse and Prospero, have not been completed. However, when the briefing before us contains no arguments or citations to the record about these other sales, they cannot defeat the mootness of this appeal. *Cowiche Canyon Conservancy,* 118 Wn.2d at 809.

private—may weigh in favor of the exception, especially if one accepts the Center's characterization of the issues as ecological. But the other two factors do not.

The second factor—whether an authoritative determination to guide DNR is desirable—does not help the Center. Several of the Center's arguments in this appeal are unique to the About Time sale, focusing on DNR's *specific* actions taken in this *specific* sale. For example, the Center argues that DNR failed to fulfill the requirements for the 2007 Procedure when it failed to identify the specific items of required information when there is no forest plan. After the completion of the sale, DNR attempted to respond to these allegations through the creation of the About Time Stand Analysis and its listing of specific information. The Center alleged it was an improper post-hoc rationalization for the validity of this particular sale. Nothing in the record shows these issues permeate other timber sales.

Another aspect tied narrowly to the About Time sale is the allegation of SEPA violations. The Center asserts DNR violated SEPA because it failed to identify in the About Time DNS specific conflicts with the HCP, PSF, and 2007 Procedure. These allegations identify specific acts DNR failed to do in its particular approval for the About Time sale. With these important arguments tied solely to the details of the About Time sale and its specific SEPA checklist, any value of "an authoritative determination" is limited. Thus, the second factor supports dismissing the Center's appeal as moot.

Whether the third factor—the likelihood of future recurrence of the question—weighs against or in favor of review depends on what the "question" is. It is true that aspects of DNR's general interpretations of the HCP, PSF, and 2007 Procedure will likely recur with future timber sales. But, as shown above, the details of how these interpretations applied to the About Time sale

9

will not. Viewing this particular appeal as a whole, the Center's grievances with DNR's general interpretations of its obligations are too intertwined with the specifics of the About Time sale to be able to easily disentangle them for a decision on a question that will likely recur in the future.

But the most compelling reason to reject the use of the public interest exception comes from the additional consideration implicated by the exception—whether the issue is likely to escape review in future appeals. The Center, itself, makes this point when it argues that numerous challenges to DNR's decisions are either imminent or actually pending. In its recent briefing before us, the Center alleges that in August 2022, 69 additional timber sales containing structurally complex forests were planned for auction, and even more timber sales have been approved since then. Additionally, at least two other timber sales are alleged to have been appealed by other plaintiffs. Assuming the requirements for an injunction can be met and a stay is prudently obtained, there is no reason to assume review of those sales would not occur. And if, as argued by the Center, the About Time sale shares important issues common to these numerous other timber sales, these common issues will not likely escape review in the future. Except that such review will involve the potential for tangible relief, rather than being a "purely academic" exercise. *See Malkasian*, 157 Wn.2d at 258.

After considering the three factors, we determine that this is not a "rare" case that meets the public interest exception. Accordingly, we dismiss the Center's appeal of the About Time sale as moot.

CONCLUSION

Because the Center's requested relief can no longer be granted by us and no compelling exception to mootness exists, we dismiss the Center's appeal.

No. 56964-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

VELJACIC, P.J.

CHE, J.